IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION,<br><br>_____/<br><br>This Document Relates to<br>Individual Cases C 10-5711 and C 10-5212<br><br><br><br><br>_____/ | No. C 07-1827 SI<br><br>**ORDER REMANDING _STATE OF WASHINGTON v. AU OPTRONICS CORP._, (C 10-5711) TO KING COUNTY SUPERIOR COURT; AND REMANDING _THE PEOPLE OF THE STATE OF CALIFORNIA v. AU OPTRONICS CORPORATION_, (C 10-5212) TO THE SUPERIOR COURT FOR THE COUNTY OF SAN FRANCISCO** |

On February 9, 2011, the Court held a hearing on motions to remand filed by the States of Washington and California in these cases. For the reasons set forth below, the Court GRANTS the motions and REMANDS these actions to the state courts from which they were removed.

## BACKGROUND

On August 11, 2010, the State of Washington, through its Attorney General, filed _State of Washington v. AU Optronics et al._, in King County Superior Court. Defendants removed the case to the Western District of Washington, asserting jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453. This action was designated as related to MDL No. 07-1827 and transferred to this Court. On October 15, 2010, the State of California, through its Attorney General, filed _The People of the State of California et al. v. AU Optronics Corp._, in the Superior Court for the County of San Francisco. Defendants removed the case to this Court, asserting jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453.

Both cases allege that the defendants have engaged in a conspiracy to fix the prices of liquid

crystal display ("LCD") panels, and that state agencies and consumers were harmed by paying inflated prices for products containing LCD panels.  In both cases, the States seek, *inter alia*, damages on behalf of state agencies, and damages and/or restitution on behalf of consumers.  Now before the Court are motions by the States to remand these actions to their respective state courts.

**LEGAL STANDARD**

Generally, a state court action is only removable to federal court if it might have been brought there originally.  28 U.S.C. § 1441(a).  The federal removal statute is strictly construed, and federal courts reject jurisdiction if there is any doubt as to whether removal was proper.  *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).  Federal law, 28 U.S.C. § 1446(b), requires that the notice of removal of a civil action must be filed within 30 days after service.  The party seeking removal bears the burden of proving its propriety.  *Duncan*, 76 F.3d at 1485; *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006).

Under CAFA, "district courts shall have original jurisdiction in any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2).  CAFA also provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."  *Id.* § 1332(d)(6).  Because CAFA permits federal court jurisdiction where only minimal, rather than complete, diversity exists, "[s]ection 1332(d) thus abandons the complete diversity rule for covered class actions."  *Abrego Abrego*, 443 F.3d at 680.  The Ninth Circuit has explained that CAFA did not disturb the traditional allocation of the burden of establishing removal jurisdiction, holding "that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."  *Id.* at 685; *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005).

**DISCUSSION**

The States contend that this Court does not have jurisdiction because there is no minimal

2

United States District Court
For the Northern District of California

1  diversity between citizens as required by CAFA, and because the States' actions are *parens patriae*

2  actions that are neither "class actions" nor "mass actions" under CAFA.

### I.  Minimal diversity

5  "[A] State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda County*,

6  411 U.S. 693, 717 (1973); *Dyack v. N. Mariana Islands*, 317 F.3d 1030, 1037 (9th Cir. 2003). However,

7  in certain circumstances, a state may assume the citizenship of other real parties in interest, and "a

8  federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship

9  of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). Defendants

10  argue that even though the States are the named plaintiffs in these cases, the real parties in interest are

11  the citizens of California and Washington, and thus that there is minimal diversity under CAFA.

12  A State is a real party in interest when it "'allege[s] injury to a sufficiently substantial segment

13  of its population,' 'articulate[s] an interest apart from the interests of particular private parties,' and

14  'express[es] a quasi-sovereign interest.'" *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*,

15  256 F.3d 879, 885 (9th Cir. 2001) (alterations in original) (citing *Alfred L. Snapp & Son v. Puerto Rico*,

16  458 U.S. 592, 607 (1982)). The Supreme Court has recognized that one sovereign interest is "the

17  exercise of sovereign power over individuals and entities within the relevant jurisdiction [which]

18  involves the power to create and enforce a legal code, both civil and criminal." *Alfred L. Snapp & Son*,

19  458 U.S. at 601. In addition, "a State has a quasi-sovereign interest in the health and well-being – both

20  physical and economic – of its residents in general." *Id*. at 607. The States argue that they have

21  sovereign and quasi-sovereign interests in enforcing their consumer protection and antitrust laws, and

22  in securing an honest marketplace and the economic well-being of their citizens.

23  Defendants contend that while the States may have these interests, the States cannot be

24  considered the real parties in interest for their claims for restitution (both States) and damages

25  (California). Courts have traditionally evaluated whether a State is the real party in interest by

26  evaluating the complaint and record as a whole. *See In re New York*, 256 U.S. 490, 500 (1921)

27  (determining the real party in interest by looking at "the essential nature and effect of the proceeding,

28  as it appears from the entire record."). However, defendants argue that the Court should adopt a claim-

by-claim approach because, due to CAFA's minimal diversity requirement, "the presence of *any* real parties in interest other than the State creates the minimal diversity required by § 1332(d)(2)." Opposition in C 10-5212 at 5:13-14.

Defendants rely on *West Virginia ex rel. McGraw v. Comcast Corporation*, 705 F. Supp. 2d 441 (E.D. Pa. 2010), and *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008), both of which adopted a claim-by-claim analysis to determine whether the States were the real parties in interest. In *Comcast*, West Virginia filed a *parens patriae* action alleging that Comcast's requirement that its premium subscribers rent cable boxes only from it constituted impermissible tying behavior, in violation of state antitrust and consumer protection laws. The state sought treble damages, damages, disgorgement, restitution, civil penalties, injunctive relief, and attorneys' fees and costs. The court found that the case was brought not on behalf of the general public, but rather on behalf of a specific group of individuals, Comcast's premium subscribers. *Comcast*, 705 F. Supp. 2d at 449. Adopting a claim-by-claim approach, the court held that the State's claims for damages, treble damages, and restitution were brought for the benefit of these subscribers, and thus that these subscribers were the real parties in interest, satisfying CAFA's minimal diversity requirement. *Id.* at 450. In *Caldwell*, Louisiana brought a *parens patriae* action against a number of insurance companies alleging that the companies engaged in a scheme to manipulate the value of policyholder claims, in violation of state antitrust law. In a divided opinion, the Fifth Circuit held that the individual policyholders were the real parties in interest for the claim for treble damages. *Caldwell*, 536 F.3d at 429-30.

Neither *McGraw* nor *Caldwell* cites any language in CAFA to support a claim-by-claim approach to evaluating the real party in the interest in a *parens patriae* case. There is no such language in CAFA, as the statute simply states that minimal diversity is satisfied when "any *member* of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(A) (emphasis added). CAFA does not state that when there is one plaintiff, such as a State bringing a *parens patriae* action, the plaintiff's claims should be analyzed separately to determine citizenship. Rather than finding support within the language of CAFA, *McGraw* and *Caldwell* adopt the claim-by-claim approach as "most consistent with Congress's intent under CAFA to expand federal jurisdiction over class actions." *Comcast*, 705 F. Supp. 2d at 447; *see also id.* at 448-49 (discussing legislative history); *Caldwell*, 536

United States District Court
For the Northern District of California

F.3d at 424.  However, while the legislative history of CAFA clearly demonstrates Congress's intent

to expand federal jurisdiction over *class actions*, it does not clearly demonstrate a congressional intent

that CAFA should apply to *parens patriae* actions.  *See Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d

749, 752-54 (D.N.J. 2005) (surveying CAFA's legislative history and concluding that it was not

Congress' intent to encroach upon States' authority to bring *parens patriae* actions).[1]  The Court is

unpersuaded by defendants' argument that simply because CAFA was intended to broaden federal

jurisdiction over class actions, federal courts are required to deviate from the traditional "whole

complaint" analysis when evaluating whether a State is the real party in interest in a *parens patriae* case.

*Cf. Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1052 (C.D. Ill. 2009) (surveying cases and noting

that most courts have "looked at the essential nature and effect of the complaint as a whole, rather than

divvying up the complaint by the relief sought.").

      Accordingly, the Court evaluates California's and Washington's complaints as a whole to

determine whether the States are the real parties in interest.  California's complaint is brought under the

California Cartwright Act's *parens patriae* provision, Cal. Bus. & Prof. Code § 16760, and the

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  Section 16760 of the Cartwright

Act provides, *inter alia*,

---

[1] The *Blockbuster* court recognized that a proposed amendment to explicitly exempt an action brought by an attorney general from the reach of Section 1332(d) was defeated in the Senate.  *See* 151 Cong. Rec. S1157-02, at S1157-58 (2005).  However, the court rejected the defendant's argument that this defeat meant that *parens patriae* actions should be considered class actions under Section 1332(d), because the underlying debate revealed that a number of senators believed the amendment to be unnecessary.  *See Blockbuster*, 384 F. Supp. 2d at 753 (quoting Senator Grassley's statement during the debate: "State attorneys general have authority under the laws of every State to bring enforcement actions to protect their citizens.  Sometimes these laws are *parens patriae* cases, similar to class actions in the sense that the State attorney general represents the people of that State.  In other instances, their actions are brought directly on behalf of that particular State.  But they are not class actions; rather, they are very unique attorney general lawsuits authorized under State constitutions or under statutes.  One reason this amendment is not necessary is because our bill will not affect those lawsuits."  *See also id.* (additional similar statements by Senators Grassley, Hatch, Cornyn and Specter)).

Based upon the silence in CAFA regarding *parens patriae* actions, as well as CAFA's legislative history, several courts have held that "CAFA does not apply to [state enforcement] actions."  *Connecticut v. Moody's Corp.*, 664 F. Supp. 2d 196, 202 (D. Conn. 2009) (granting a motion to remand by the State of Connecticut); *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 752-54 (D.N.J. 2005) (surveying CAFA's legislative history and concluding that it was not Congress' intent to encroach upon States' authority to bring *parens patriae* actions).  This Court finds it unnecessary to determine whether, as a categorical matter, CAFA does not apply to *parens patriae* actions.  Instead, as set forth in this order, the Court finds that here the States are the real parties in interest, and neither CAFA's minimal diversity nor "class action" or "mass action" prongs is met here.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(a) (1) The Attorney General may bring a civil action in the name of the people of the State of California, as parens patriae on behalf of natural persons residing in the state, in the superior court of any county which has jurisdiction of a defendant, to secure monetary relief as provided in this section for injury sustained by those natural persons to their property by reason of any violation of this chapter. The court shall exclude from the amount of monetary relief awarded in the action any amount of monetary relief (A) which duplicates amounts which have been awarded for the same injury, or (B) which is properly allocable to (I) natural persons who have excluded their claims pursuant to paragraph (2) of subdivision (b), and (ii) any business entity.

(2) The court shall award the state as monetary relief three times the total damage sustained as described in paragraph (1), the interest on the total damages pursuant to Section 16761, and the costs of suit, including a reasonable attorney's fee.

Cal. Bus. & Prof. Code § 16760 (a)(1)-(2).[2]  California seeks injunctive relief, damages for harm to its agencies and a limited (and non-class) group of local government entities, restitution, and treble damages under the Cartwright Act.[3]  With regard to the *parens patriae* claim for treble damages, California notes that pursuant to the Cartwright Act, those damages are paid to the State, and that "monetary relief recovered by the Attorney General shall be distributed as follows: . . . In any manner as the superior court having jurisdiction over the action in its discretion may authorize to insure, to the extent possible, that each person be afforded a reasonable opportunity to secure his or her appropriate portion of the monetary relief.  In exercising its discretion, the court may employ cy pres or fluid recovery mechanisms as a way of providing value to persons injured as a result of a violation of this chapter."  Cal. Bus. & Prof. Code § 16760(e)(1).  In addition, to the extent the monetary distribution is not exhausted by distribution, those funds escheat to the State.  *Id.* § 16760(e)(3).

Washington's complaint seeks injunctive relief, civil penalties, actual damages for the State of

---

[2]  California added *parens patriae* authority to the Cartwright Act following enactment of the Hart-Scott-Rodino Antitrust Improvements Act (the "HSR" Act), 15 U.S.C. § 15c.  The HSR Act "was designed to enhance the effectiveness of antitrust enforcement on behalf of small consumers." *Illinois v. Abbott & Assocs.*, 460 U.S. 557, 573 n.29 (1983).  In enacting the HSR Act, "Congress focused on the difficulty of achieving class certification of consumer actions under Rule 23 of the Federal Rules of Civil Procedure and the complexity of measuring and distributing damages in such cases." *Id.*  "To remedy these problems, the 1976 statute permits State attorneys general the right to institute *parens patriae* suits [under the Sherman Act] on behalf of State residents[,] . . . exempts such suits from the class action requirements of Rule 23, . . . and allows damages in these suits to be computed through aggregation techniques, . . ." *Id.* (citing HSR Act).

[3]  In addition, California states that it inadvertently omitted a claim for civil penalties from the complaint, and that California will seek to amend the complaint to add a claim for civil penalties.  Those penalties, $2,500 for each violation (Cal. Bus. & Prof. Code § 17206), would inure to the State.  Defendants correctly argue that the Court's review is limited to the complaint as it stood at the time of removal.

Case 3:07-md-01827-SI Document 2456 Filed 02/05/11 Page 7 of 12

Washington and its agencies, and restitution on behalf of Washington consumers. Defendants argue that the civil penalties, which are capped at $500,000 per defendant, are far less than the claimed damages. Washington responds by asserting that each consummation of an illegal agreement during the relevant time period constitutes a violation of Wash. Rev. Code § 19.86.030 and is punishable by a civil penalty of up to $500,000 per defendant under Wash. Rev. Code § 19.86.140[4], "which necessarily obviates the disparity the Defendants claim to exist." Reply at 4 n.4. Washington argues that even if defendants' interpretation of the civil penalties provision is correct, this matter could encompass civil penalties of up to $10,000,000 because there are 20 defendants. Moreover, contrary to defendants' assertion that Washington is seeking treble damages on behalf of Washington consumers, Washington is seeking actual damages for state agencies, and restitution for Washington consumers.

The Court finds that the States of California and Washington are the real parties in interest because both States have a sovereign interest in the enforcement of their consumer protection and antitrust laws. In contrast to *Comcast* and *Caldwell*, where the States sued on behalf of limited groups of private parties (premium cable subscribers and insurance policyholders), here the States are suing on behalf of all consumers in their respective states who purchased a wide range of allegedly price-fixed products. The States have a sovereign interest in securing an honest marketplace and the economic well-being of their citizens. *See Snapp*, 458 U.S. at 607. Both States seek wide-ranging injunctive relief and Washington seeks significant civil penalties.[5] The damages that California seeks, while on behalf of its consumers, would first be paid to the State and distributed on an equitable basis. The fact that private parties may benefit from the States' actions does not negate the States' substantial interests in these cases.

---

[4] This section provides, in relevant part, "Every corporation which violates RCW 19.86.030 or 19.86.040 shall pay a civil penalty of not more than five hundred thousand dollars." Wash Rev. Code § 19.86.140.

[5] If the Court could consider the civil penalties that California intends to seek, this fact would further support the finding that California is the real party in interest, as the civil penalties sought would be substantial.

**II.     Class action/mass action**

In order for the Court to have jurisdiction under CAFA, the case must be a "'class action' [which] means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action . . . ." 28 U.S.C. § 1332(d)(1)(B). The parties dispute whether the States' *parens patriae* actions qualify as "class actions" under CAFA.    In addition, in the Washington case, defendants asserted an alternate basis for CAFA removal, namely that the case is a "mass action" under CAFA.

To a large degree, the parties' arguments about whether the States' complaints are "class actions" or "mass actions" overlap with the arguments about whether the States are the real parties in interest. To the extent that the issues raised by the "class action" and "mass action" prongs of CAFA are distinct from those raised by the minimal diversity requirement, the Court addresses them.

**A.     California's action**

California argues that neither California's *parens patriae* statute under the Cartwright Act, nor the UCL is a "similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." California's complaint was filed, *inter alia*, under a statutory provision of the Cartwright Act authorizing:

> The Attorney General may bring a civil action in the name of the people of the State of California, as *parens patriae* on behalf of natural persons residing in the state, in the superior court of any county which has jurisdiction of a defendant, to secure monetary relief as provided in this section for injury sustained by those natural persons . . .

Cal. Bus. & Prof. Code § 16760(a)(1). The State's authority under this statute is in addition to common law *parens patriae* authority. *Id.* at § 16760(f). The statute requires that the Attorney General provide notice to people on whose behalf the action is brought, an opportunity for those people to opt out, court approval of dismissal or settlement, and provides that persons who do not opt out are bound by the action. The statute does not require certification or joinder, nor is there anything in Section 16760 regarding numerosity, typicality, commonality or adequacy of representation. California's complaint was also filed under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17204.

"An action brought pursuant to Business and Professions Code section 17200 et seq. by a prosecutor is fundamentally different from a class action or other representative litigation." *Payne v. Nat'l Collection Systems, Inc.*, 91 Cal. App. 4th 1037, 1045 (2001). Unlike private litigants, the Attorney General has statutory authority to sue under the UCL and need not demonstrate standing. *See* Cal. Bus. & Prof. Code § 17204; *Blue Cross of California, Inc. v. Superior Court*, 180 Cal. App. 4th 1237, 1249 (2009), *mod. on denial of reh'g, rev. den.* (2010). The Attorney General need not certify a class in order to recover on behalf of individuals. In addition, a UCL action brought by the Attorney General "lacks the fundamental attributes of a consumer class action filed by a private party. The Attorney General or other governmental official who files the action is ordinarily not a member of the class, his role as a protector of the public may be inconsistent with the welfare of the class so that he could not adequately protect their interests (Civ. Code, § 1781, subd. (b)(4)) and the claims and defenses are not typical of the class (Civ. Code, § 1781, subd. (b)(3).)." *Id.* (quoting *People v. Pacific Land Resources Co.*, 20 Cal.3d 10, 18 (1977)). Accordingly, a judgment for restitution secured by the Attorney General does not have any collateral estoppel effect on private actions for restitution. *See Payne*, 91 Cal. App. 4th at 1047.

Defendants argue that the Court should look past the State's labeling of this action as a *parens patriae* case, and consider the essential nature of the action, which they assert is a class action. As support, defendants cite the Senate Judiciary Committee Report on CAFA. This report, which was issued ten days after CAFA's passage into law, states in relevant part:

> [T]he definition of "class action" is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labeled "class actions" by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class action for the purpose of applying these provisions.

S. Rep. No. 109-14, at 35 (quoted in *Caldwell*, 536 F.3d at 424).

The Court finds defendants' reliance on the Senate report unpersuasive. In *Abrego Abrego*, the Ninth Circuit rejected a similar effort to rely on a different portion of the Senate Report on the ground that "consideration of legislative history is appropriate where statutory language is ambiguous. Ambiguity, however, is at least a necessary condition." 443 F.3d at 683-84 (rejecting reliance on Senate Report statement that CAFA shifted the burdens normally applicable in the removal context because

9

the statute "is entirely silent as to the burden of proof on removal. Faced with statutory silence on the burden issue, we presume that Congress is aware of the legal context in which it is legislating."). On the question presented here, there is no ambiguity in the statute as the statute plainly states that "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). As the Ninth Circuit noted in *Abrego Abrego*, there are numerous aspects of CAFA that evidence Congress' intent to broaden federal jurisdiction with regard to certain kinds of actions, and that "[r]ather than convincing us that CAFA, by way of implication alone, shifted the burden of proof on removal, we conclude that these broadening provisions indicate that Congress carefully inserted into the legislation the changes it intended and did not mean otherwise to alter the jurisdictional terrain." *Abrego Abrego*, 443 F.2d at 684-85.

The Court concludes that California's *parens patriae* action is not a "class action" within the meaning of CAFA. California's complaint was not filed "under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The Court finds persuasive *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942 (E.D. Mo. 2010), in which the court held that an action brought by the state attorney general was not a class action under CAFA and remanded the case to state court. In *Koster*, the state attorney general brought an action alleging deceptive and unfair marketing practices under the Missouri Merchandising Practices Act. The attorney general sought injunctive relief, civil penalties, orders that the defendants make restitution to the State and to consumers, and investigation and prosecution costs. *Id.* at 943. The defendants removed the case under CAFA, arguing that the case was a representative class action because Missouri consumers were the real parties in interest who would benefit from the restitution sought. The district court disagreed, and held that the case was not a "class action" under CAFA. The court noted that the attorney general did not bring the lawsuit pursuant to Missouri's equivalent of Rule 23, and that the state did not need to certify a class in order to proceed. *Id.* at 947. "Therefore, under the plain meaning of § 1332(d)(1)(B), the suit does not qualify as a 'class action' under the CAFA." *Id.*

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

**B.  Washington's action**

    **1.  Class action**

Washington's complaint was filed under Washington's Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86 which provides,

> The attorney general may bring an action in the name of the state, or as parens patriae on behalf of persons residing in the state, against any person to restrain and prevent the doing of any act herein prohibited or declared to be unlawful; and the prevailing party may, in the discretion of the court, recover the costs of said action including a reasonable attorney's fee

Wash. Rev. Code § 19.86.080(1).  The Washington complaint is not filed as a class action under either Rule 23 or Washington State Superior Court Civil Rule 23.  The CPA does not require Washington to certify a class, does not provide notice to absentee plaintiffs, provides no opt-out method to interested parties, and does not prescribe standards for adequate representation.  For all of the reasons stated above with regard to California, the Court finds that Washington's case is not a "class action" under CAFA.

    **2.  Mass action**

CAFA provides that "'mass action' means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional requirements under subsection (a) ["where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"]."  28 U.S.C. § 1332(d)(11)(B)(I) & § 1332(a).

For all of the reasons discussed *supra*, the State is the real party in interest, and thus the numerosity requirement of a "mass action" is not met.  In addition, courts have held that the plaintiffs in a mass action must be individually named plaintiffs with their own direct claims in order to be counted toward CAFA's 100 person requirements.  *See Missouri*, 686 F. Supp. 2d at 947; *Kitazao v. Black Diamond Hosp. Investments, LLC*, No. 09-00271, 2009 WL 3209298, at *6 (D. Haw. Oct. 6, 2009).  Here, the State of Washington is the only named plaintiff.

United States District Court
For the Northern District of California

1   **CONCLUSION**

2        For the foregoing reasons, the Court GRANTS the motions to remand and remands *Washington*

3   *v. AU Optronics et al.*, C 10-5711 to King County Superior Court and remands *The People of the State*

4   *of California et al. v.* , C 10-5212 to the Superior Court for the County of San Francisco.  (Docket Nos.

5   2233 and 2249 in 07-1827 SI; No. 55 in 10-5711 SI; and No. 10 in 10-5212 SI).

6

7   **IT IS SO ORDERED.**

8

9   Dated: February 15, 2011

10                                              SUSAN ILLSTON
                                           United States District Judge